405 So.2d 141 (1981)
W. T. RATLIFF COMPANY, INC.
v.
Irby C. HENLEY.
79-632.
Supreme Court of Alabama.
September 25, 1981.
*143 Daniel A. Pike and Mary Elizabeth Hurm of Sintz, Pike, Campbell & Duke, Mobile, for appellant.
Joseph C. McCorquodale, III, of McCorquodale & McCorquodale, Jackson, and Thomas M. Galloway, Jr. of Collins, Galloway & Smith, Mobile, for appellee.
BEATTY, Justice.
The defendant, W. T. Ratliff Company, Inc., appeals from an adverse judgment based upon a jury verdict finding it liable for continuing trespass and from the denial of its motion for new trial. We affirm.
Irby C. Henley filed this action in Clarke Circuit Court against W. T. Ratliff Company, Inc. (Ratliff), Thomas Bradley, Sr., and fictitious parties, seeking to recover damages for injury to real property. Ratliff leased the property from Henley in 1972, and began surface mining operations thereon. In 1973 Henley complained to Ratliff's representatives about sand and gravel washing onto his other property as a result of the mining operations. Ratliff's representatives assured constructive action but failed to alleviate the problem and the washing of sand and gravel onto Henley's property continued.
Henley's complaint alleging damage to his property contained four counts: 1) negligence; 2) wantonness; 3) continuing trespass; and 4) nuisance. During the trial, motions for directed verdicts as to count one, sounding in negligence, and count four, sounding in nuisance, were granted in favor of Ratliff. At the close of Henley's evidence, Ratliff filed a motion to strike Henley's claim for punitive damages, which was denied. The jury returned a verdict in favor of Henley for $75,000.00. Ratliff's motion for judgment notwithstanding the verdict or, in the alternative, a new trial, was denied. Ratliff appealed on May 15, 1980.
On January 6, 1981, this Court ordered that the appeal be dismissed. 394 So.2d 369. The suit had been filed against Ratliff and Thomas Bradley, Sr., yet the judgment had not disposed of the suit insofar as Thomas Bradley, Sr. was concerned. Because there had been no compliance with Rule 54(b), ARCP, this Court found that the judgment was not final and dismissed the appeal.
Subsequent to the dismissal, the trial court entered a directed verdict in favor of Thomas Bradley, Sr. on all counts. On April 7, 1981, we determined that the judgment was final as to Ratliff and reinstated the appeal.
Ratliff raises five issues on appeal:
(1) Whether proper jurisdiction and service of process was obtained over Ratliff, a dissolved foreign corporation.
(2) Whether the action sued upon is trespass on the case and, therefore, barred by the applicable one-year statute of limitations.
*144 (3) Whether the evidence justified submitting the case to the jury on the wanton count, thereby allowing recovery of punitive damages.
(4) Whether it was error to allow plaintiff Henley's witness to testify concerning value of Henley's property and the amount of damage suffered.
(5) Whether the trial court's charge to the jury on the measure of damages relative to injuries to real property was erroneous.

I. JURISDICTION
On May 2, 1975, approximately a year and a half before Henley filed this action, Ratliff filed a statement of intent to dissolve with the Secretary of State of Kentucky. Ratliff argues that a dissolved foreign corporation is incapable of suing or being sued in Alabama.
Section 10-2-212 (repealed by Acts 1980, No. 80-633, § 192 effective January 1, 1981) of the Code of 1975 provided that "[c]orporations whose charters have expired or which have been dissolved otherwise than by judicial order continue to exist as bodies corporate for a period of five (5) years after such dissolution for the purpose of prosecuting or defending actions ...."[1] In Ex parte Davis, 230 Ala. 668, 162 So. 306 (1935), we found that section to be inapplicable to foreign corporations. Absent proof to the contrary, however, the trial court could have reasonably assumed that a provision like § 10-2-212 exists in other states (including Kentucky, Ratliff's state of incorporation), George D. Witt Shoe Company v. Mills, 224 Ala. 500, 140 So. 578 (1932), and that Ratliff could be sued for some stated period of time after its dissolution. On public policy grounds, it would be unconscionable to allow a foreign corporation to do business in our state and then permit it upon its own volition and without any time limitation to leave those whom it has damaged with no recourse after its subsequent dissolution.
Ratliff also asserts that service of process was never perfected upon it, thereby depriving the trial court of jurisdiction. However, the record reveals that service was made upon Ratliff by certified mail to Edwin L. Tomppert and Wilma B. Heimann, two of the three directors of the former corporation, whose names and addresses appeared on Ratliff's statement of intent to dissolve. In Railway Fuel Company v. Ackerman, 269 Ala. 460, 114 So.2d 142 (1959), we held that in a suit against a dissolved domestic corporation service of process, absent express provision for it in § 10-2-212 (repealed 1981), Code of 1975,[2] is properly had upon one of the directors-trustees. That rule is equally applicable to service upon dissolved foreign corporations. Henley, then, perfected service upon Ratliff when he served two of the directors of the former corporation.

II. STATUTE OF LIMITATIONS
Ratliff argues that the allegations of Henley's complaint show an action in trespass on the case, as distinguished from trespass, thereby barring Henley's claim by the one-year statute of limitations set out in § 6-2-39(a)(5), Code of 1975. The statute of limitations for an action in trespass is six years. Section 6-2-34(2), Code of 1975. If this action is one for trespass, the record shows that the filing of the suit in 1976 was well within the six-year period which began in 1973, the time damage was first incurred. The resolution of this issue, then, depends upon a close examination of the recent decisions of this Court addressing the distinctions between trespass and case.
Initially, we note that the historical distinction between trespass and case was that trespass involved a direct act done with force and immediately injurious to the person *145 of another or to property in his possession. If any of the elements requisite to compose a trespass was lacking, the remedy was in an action on the case. That is, case would lie when the detriment to the plaintiff resulted from the wrongful act only indirectly and through a consequence occasioned by some intervening agency. Case would not require possession by the plaintiff nor immediate injury. C. Keigwin, Cases in Common Law Pleading 100-122, 159-179 (2d ed. 1934).
If we were to apply the strict historical distinctions, the facts of the case at bar would show an action for trespass on the case, rather than trespass. The record clearly states that sand and gravel flowed from Ratliff's operations onto Henley's property whenever it rained. Thus, the consequential damage to the property was occasioned by an intervening agency, the rain. No direct act of force on the part of Ratliff caused the damage. The strict common law distinctions between the two remedies, however, have been modified during the past decade.
In Rushing v. Hooper-McDonald, Inc., 293 Ala. 56, 300 So.2d 94 (1974), the defendant emptied asphalt on its own land. The asphalt ran downhill onto another tract and into a stream which carried it to the plaintiff's pond, resulting in pollution and other damage. This Court found that the defendant's act constituted trespass and relied upon the Restatement (Second) of Torts, § 158, Liability for Intentional Intrusions on Land (1965), as the authority for the holding. In particular, we emphasized a portion of the comments from that section, which explains an actionable trespass as follows:
In order that there may be a trespass ... it is not necessary that the foreign matter should be thrown directly and immediately upon the other's land. It is enough that an act is done with knowledge that it will to a substantial certainty result in the entry of the foreign matter. Thus one who so piles sand close to his boundary that by force of gravity alone it slides down onto his neighbor's land, or who so builds an embankment that during ordinary rainfalls the dirt from it is washed upon adjacent lands, becomes a trespasser on the other's land. [Emphasis added.]
The facts in the present case clearly fit within the definition of trespass as expressed above.
Our analysis in Rushing could not be interpreted as totally overruling the direct/indirect distinction between trespass and case that had always been adhered to in cases preceding Rushing. See, e. g., Sasser v. Dixon, 290 Ala. 17, 273 So.2d 182 (1973). Instead, Rushing merely pointed out that a direct injury may be found even though the trespassing matter was not placed directly on plaintiff's land, as long as the flow to plaintiff's land was direct. In Borland v. Sanders Lead Co., Inc., Ala., 369 So.2d 523 (1979), however, we went a step beyond Rushing and clearly stated that "the law presently allows an action to be maintained in trespass for invasions that, at one time, were considered indirect." Id. at 529. Borland established four elements which a plaintiff must prove in order to recover for an indirect trespass:
1) an invasion affecting an interest in the exclusive possession of his property; 2) an intentional doing of the act which results in the invasion; 3) reasonable foreseeability that the act done could result in an invasion of plaintiff's possessory interest; and 4) substantial damages to the res. [Id. at 529.]
Each of the above elements has been satisfied in the instant case. Henley's possessory interest in his land was invaded by the sand and gravel flowing from Ratliff's operations. Certainly, Ratliff, as well as any reasonable person, could foresee that it might rain at some point in time in Clarke County and, thereby, wash sand and gravel onto Henley's property. And, as the record shows, Henley's property was substantially damaged by the invasion. Ratliff argues, to no avail, that the second element of the test for an indirect trespass, an intentional doing of the act which results in the invasion, was not proven. We pointed out in Born v. Exxon Corp., Ala., 388 So.2d 933 *146 (1980), that Borland and Rushing clearly indicate that in order for one to be liable to another for trespass, direct or indirect, the person must intentionally enter upon land in the possession of another or the person must intentionally cause some "substance" or "thing" to enter upon another's land. 388 So.2d at 934. That is, the intent do to the act which leads to the trespass is the requirement, not the intent to actually trespass. Thus, when Ratliff placed the sand and gravel on its own leased property with knowledge to a substantial certainty that such action could lead to trespass when it rained, the element of intent was satisfied.
From the foregoing discussion, it is apparent that the facts of this case support an action for trespass and that suit was timely filed within the six-year statute of limitations.

III. WANTONNESS
Although Ratliff contends that the trial court erred in refusing to grant a directed verdict in favor of it on the wantonness count, the evidence in the record reveals otherwise. All that need be shown to prove wantonness in a trespass action is knowledge on the part of the defendant of his invasion of the plaintiff's rights. Calvert and Marsh Coal Co., Inc. v. Pass, Ala., 393 So.2d 955, 956 (1980).
Obviously, Ratliff knew about the washing of sand and gravel onto Henley's property, for testimony revealed that Henley complained frequently to Ratliff's representatives, who replied that they would take care of the problem. Thus, the submission to the jury of the wantonness court was proper.
In view of our holding that there was evidence supporting the wantonness count, Ratliff's further contention that the trial court erred in refusing to grant its motion to strike Henley's claim for punitive damages is without merit. In fact, the verdict itself does not appear to reflect punitive damages since $115,000.00 damages were attested to and the verdict was returned for $75,000.00.
But, assuming arguendo that the verdict encompassed punitive damages, such an award is warranted when the trespass is attended by wantonness or recklessness. Rushing v. Hooper-McDonald, Inc., 293 Ala. 56, 300 So.2d 94 (1974). The jury could have easily found that Ratliff's acts were of the nature described above.

IV. TESTIMONY ON DAMAGES
Henley's witness, Joe Courtney, testified that the exact amount of damage done to Henley's land was $115,000.00. Courtney based his assessment of the damages to the whole on his opinion as to the value of the land before and after the sand and gravel deposits. Ratliff argues that Courtney was not qualified to form an opinion relative to the value of the property and that, even if qualified, Courtney's opinion as to the damages invaded the province of the jury.
The record shows that Courtney had appraised property for twenty-seven years in Clarke, Mobile and Baldwin Counties in Alabama. He has been familiar with the Henley property for six to eight years and viewed the Henley property five or six times before reaching his appraisal. Even if Courtney does not qualify as an expert, we held in Baldwin v. McClendon, 292 Ala. 43, 288 So.2d 761 (1974), that a witness who undertakes to speak in regard to the value of a piece of land need not be an expert. If he has given special attention to land values, he should be able to say, at least, what his opinion as to the value of the particular tract of land is, provided, of course, he shows a means of knowledge about the tract in question. 292 Ala. at 51, 288 So.2d at 768. See also Sanford v. Sanford, Ala., 355 So.2d 365 (1978). It was appropriate, then, for Courtney to testify as to the value of the land.
Ratliff is correct in asserting that a witness may not testify that the damage to plaintiff's land was a certain sum. Instead, the witness should state the condition of the property and leave the conclusion to the jury. Alabama Great Southern R. R. Co. v. Russell, 254 Ala. 701, 48 So.2d 249 (1949).
*147 Courtney's testimony that the damages totalled $115,000.00, however, was harmless error, Rule 45, ARAP, particularly since the jury reached a different conclusion from Courtney by finding that the damages amounted only to $75,000.00.

V. MEASURE OF DAMAGES
Ratliff claims that the trial court's oral charge to the jury on the measure of damages for trespass was erroneous. The court instructed the jury as follows:
The general rule in the measure of damages is difference between the value of the land before and after the trespass is subservient to the underlying theory of damages. That is, plaintiff is entitled to an amount which would compensate him for actual damages sustained [sic].
That charge essentially follows our recent statement of the appropriate measure of damages for trespass found in Borland v. Sanders Lead Company, Ala., 369 So.2d 523, 530 (1979), and doubtless follows the principles approved therein. Consequently, the trial court committed no error in giving that instruction.
The trial court also properly instructed the jury that damages for continuous trespass are limited to those which have occurred before and up to trial. Code of 1975, § 6-5-217.
In conclusion, we note that a jury's verdict is presumed to be correct, and will not be set aside as excessive, unless the amount is so great as to plainly indicate that it was the result of passion, bias, prejudice or improper motive. Cecil Crews Chevrolet-Oldsmobile, Inc. v. Williams, Ala., 394 So.2d 912, 915 (1981). No such indication is present here. Moreover, that presumption is strengthened when the trial judge refuses to grant a motion for new trial. S. S. Kresge Co. v. Ruby, Ala., 348 So.2d 484, 488 (1977).
The judgment appealed from is affirmed.
AFFIRMED.
MADDOX, FAULKNER, JONES, ALMON, SHORES, EMBRY and ADAMS, JJ., concur.
TORBERT, C. J., concurs specially.
TORBERT, Chief Justice (concurring specially).
My concern in addressing the trespass issue is to make sure that the present direction of the law is clear. Justice Beatty's opinion correctly states the present law of this state as developed in Rushing v. Hooper-McDonald, Inc., 293 Ala. 56, 300 So.2d 94 (1974), and Borland v. Sanders Lead Co., 369 So.2d 523 (Ala.1979). Accordingly, reliance on Cochran v. Hasty, 378 So.2d 1131 (Ala.Civ.App.1979), even though it was decided subsequent to Borland v. Sanders Lead Co., 369 So.2d 523 (Ala.1979), is now inappropriate.
NOTES
[1] Section 10-2A-203 of the new Alabama Business Corporations Act makes several changes in the prior law and reduces the time for bringing the action from five years to two years.
[2] Sections 10-2A-31 and 10-2A-237 of Code 1975 described the procedure today for service of process upon domestic and foreign corporations; however, there is still no express provision for service upon dissolved corporations.