ROBERTSON, Presiding Judge
Lee Snyder and Patricia Snyder sued Pate Construction Company, Inc. (“Pate”), and Taylor & Mathis, Inc., on June 8,1998. The Snyders sought compensatory damages, based on allegations that the defendants had improperly connected a sewer-service line to their home and that their home had been flooded with sewage as a result. During the ensuing litigation, Taylor & Mathis was dismissed as a defendant and Howard Plumbing and Heating Company, Inc. (“Howard”), was added as a defendant. Pate filed a cross-claim against Howard on April 15, 1999. On August 6, 1999, both Pate and Howard filed summary-judgment motions as to all of the Snyders’ claims. In their response to the summary-judgment motions, the Snyders essentially conceded that the defendants were entitled to a summary judgment as to all of their claims except the one alleging trespass. On March 2, 2000, after additional consideration of the first order granting the summary-judgment motions and a hearing, the trial court entered summary judgments for Pate and Howard as to all of the Snyders’ claims, by notation on the case action summary sheet.
On appeal, the Snyders argue that the summary judgments for both Howard and Pate must be reversed.
Our standard for reviewing summary judgments is settled:
“A motion for summary judgment tests the sufficiency of the evidence. Such a motion is to be granted when the trial court determines that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. The moving party bears the burden of negating the existence of a genuine issue of material fact. Furthermore, when a motion for summary judgment is made and supported as provided in Rule 56, [Ala. R.Civ.P.,] the nonmovant may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. Proof by substantial evidence is required.”
Sizemore v. Owner-Operator Indep. Drivers Ass’n, Inc., 671 So.2d 674, 675 (Ala.Civ.App.1995) (citations omitted), cert. denied, 517 U.S. 1121, 116 S.Ct. 1354, 134 L.Ed.2d 522 (1996). Moreover, in determining whether a summary judgment was properly entered, the reviewing court must view the evidence in a light most favorable to the nonmovant. Long v. Jefferson County, 623 So.2d 1130, 1132 (Ala.1993). No presumption of correctness attaches to a summary judgment, and our review is de novo. Hipps v. Lauderdale County Bd. of Educ., 631 So.2d 1023, 1025 (Ala.Civ.App.1993) *427 (citing Gossett v. Twin County Cable T.V., Inc., 594 So.2d 635 (Ala.1992)).
The Snyders’ house was built in 1978. In 1986, Pate built a house (“the Pate house”) on the lot that adjoins the Sny-ders’ house. The Snyders bought their house in 1994. On December 14, 1995, sewage flooded into the basement of the Snyders’ house. Soon after the flooding, the Snyders discovered that the sewer-service line for the Pate house had been connected to the sewer-service line for the Snyders’ house rather than to the main sewer line. A second backup of sewage into the Snyders’ house occurred in March 1998.
The sewer-service line to the Snyders’ house ran across the property where the Pate house had been built. The connection between the sewer line to the Pate house and the line to the Snyder house was located on the Pate house property. Howard was the plumbing contractor that connected the sewer line for the Pate house. The Snyders’ expert witness, Billy Huff, testified that the connection between the sewer line leading to the Pate house and the Snyders’ sewer line was less than two feet from the connection between the Snyders’ sewer-line connection and the main sewer line. Huff testified that had the Pate house sewer connection been further than two feet from the connection between the Snyders’ sewer line and the main sewer line, the Pate house connection would not have caused any flooding into the Snyders’ house.
Pate’s expert witness, Frank Williams, testified that the connection between the Snyders’ sewer line and the Pate house line was more than two feet from the connection between the Snyders’ sewer line and the main sewer line. Both experts indicated that the Snyders’ sewer line was made of clay pipe and was connected to the plastic pipe of the main sewer line by a “Fernco” adapter. Both experts also indicated that the backup in the Snyders’ sewer line was caused by tree roots clogging the pipe at the connection between the main sewer line and the Sny-ders’ sewer line.
Huff testified that it was a breach of plumbing-industry standards to connect the sewer line from the Pate house to the Snyders’ sewer line rather than directly to the main sewer line. Huff also indicated that the seal between the Snyders’ sewer line and the main sewer line had been loosened, and he opined that the loosening occurred when the sewer connection with the Pate house was made' to the Snyders’ sewer line. Huff testified to a number of situations in which clogged sewer lines often caused sewage to flood onto properties downhill from the clog. Huff stated that because the Snyders’ house was at a lower elevation than the Pate house, the sewage flooding into the basement of the Snyders’ house was increased as a result of the connection from the Pate house to the Snyders’ sewer line.
The trial court did not present a rationale for the summary judgments entered for Pate and Howard, and the Snyders present a number of arguments supporting their contention that those summary judgments must be reversed. The initial, and critical, consideration in this case is whether the Snyders’ claim is a claim of trespass or a claim of trespass on the case. If the Snyders’ claim is a claim of trespass, the statute of limitations of § 6-2-34(2), Ala. Code 1975, applies (actions for any trespass to real or personal property must be brought within six years). However, if the Snyders’ claim is a claim of trespass on the case, the statute of limitations of § 6-2-38(1), Ala.Code 1975, applies (“[a]ll actions for any injury to the person or rights of another, not arising from contract and not specifically enumerated ... must be *428 brought within two years”). Thus, if the Snyders’ claim is trespass on the case, the summary judgments for Pate and Howard must be affirmed as barred by the limitations period of § 6-2-38(i).
This court discussed the distinction between trespass and trespass on the case in Easterling v. Awtrey Bldg. Corp. 770 So.2d 606 (Ala.Civ.App.1999). In Easter-ling, this court reversed a summary judgment that had been entered upon the trial court’s conclusion that a claim arising out of flooding of the plaintiffs land by surface water from an adjacent development sounded in trespass on the case. This court relied upon W.T. Ratliff Co. v. Henley, 405 So.2d 141 (Ala.1981), in concluding that the six-year limitations period applicable to trespass actions could apply to indirect trespasses. In W.T. Ratliff, our Supreme Court discussed the following test:
“In Borland v. Sanders Lead Co. [, 369 So.2d 523 (Ala.1979),] we ... clearly stated that ‘the law presently allows an action to be maintained in trespass for invasions that, at one time, were considered indirect.’ Id. at 529. Borland established four elements which a plaintiff must prove in order to recover for an indirect trespass:
“1) an invasion affecting an interest in the exclusive possession of his property; 2) an intentional doing of the act which results in the invasion; 3) reasonable foreseeability that the act done could result in an invasion of plaintiffs possessory interest; and 4) substantial damages to the res. [Id. at 529.]”
405 So.2d at 145.
In Easterling, supra, this court discussed the development of six-year indirect-trespass claims in our Supreme Court as follows:
“Since it decided W.T. Ratliff, which involved the deposit of sand and gravel upon adjacent land, the Alabama Supreme Court has held that the channeling of surface water onto a lower proprietor’s land will support an indirect trespass cause of action against the party responsible for the channeling. In Johnson v. Washington, 474 So.2d 651 (Ala.1985), the plaintiffs alleged that after the defendant had developed his adjoining property, they had begun to experience flooding and damage to their home, along with surface-water runoff and red dirt coming onto their land. On appeal from an adverse judgment, the defendant contended that the trial court erred in instructing the jury on the law of indirect trespass as stated in W.T. Ratliff. However, the Supreme Court concluded that the trial court’s instruction concerning indirect trespass was not erroneous, noting that ‘the evidence indicates that surface water, red dirt, sand, and other debris entered onto the plaintiffs’ land.’ 474 So.2d at 653 (emphasis added). Johnson thus recognizes that the deposit of surface water and debris upon land as a result of the change of the natural topography of adjacent land will give rise to an indirect-trespass claim against the owner of the adjoining land. See also Fisher v. Space of Pensacola, Inc., 483 So.2d 392, 395 (Ala.1986) (stating that a trespass action can be maintained in a proper case involving direct diversion of surface water, but declining to apply rule because the plaintiffs trespass claim was voluntarily dismissed before trial).”
770 So.2d at 609-10.
Although Easterling and the cases it discussed concerned an indirect trespass by surface water, we perceive no meaningful distinction between those cases and the instant case, which involves intrusion onto the Snyders’ property by sewage, for the purpose of applying the test in Borland, supra. Thus, we conclude that the Sny-ders’ claim is a claim of indirect trespass *429 subject to the six-year limitations period of § 6-2-34(2).
We next consider whether the record contains substantial evidence creating a genuine issue of material fact as to the elements in Borland. Viewing the evidence in a light most favorable to the Synders, Long, supra, we accept the proposition that Howard’s connection of the Pate house sewer line was a wrongful or negligent act. Moreover, we conclude that the record contains substantial evidence from which a trier of fact could reasonably infer that Howard’s negligent connection to the sewer line to the Pate house “broke the seal” between the Snyders’ sewer line and the main sewer line and forseeably resulted in the clogs that caused the sewage to backup into the Snyders’ house. Moreover, we also note that a trier of fact could reasonably infer that some of the sewage that flooded the Snyders’ house was sewage that flowed downhill from the Pate house. Thus, the record contains substantial evidence indicating that Howard’s negligent sewer connection resulted (indirectly, from the intruding tree roots) in the discharge of sewage into the Sny-ders’ house.
The Snyders’ claim arising from the flooding of their house with sewage is a claim of indirect trespass. Because the record contains substantial evidence raising a question of fact as to each of the elements in Borland, we conclude that the summary judgments for Pate and Howard on the Snyders’ claim of trespass must be reversed.
REVERSED AND REMANDED.
YATES, MONROE, and CRAWLEY, JJ., concur.
THOMPSON, J., concurs in the result.